UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK QUARRELS, JR.,

    Plaintiff,

v.

MEIJER RETAIL STORE, JIM
MONTGOMERY, and DEB TAUBE,

    Defendants.
_____/

Case No. 10-11715

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 6, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

On April 27, 2010, Mack Quarrels, Jr. ("Plaintiff") filed this *pro se* action against Meijer, Inc. ("Meijer") and two of its managers, alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Plaintiff also alleges violations of 42 U.S.C. §§ 1981, 1982, and 1983. Before the Court are Plaintiff's and Defendants' cross-motions for summary judgment. The Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and for the reasons stated below, grants Defendants' motion and denies Plaintiff's motion.

**I. Factual and Procedural Background**

Meijer operates a number of retail stores, and has employed Plaintiff as a cashier at its Jackson, Michigan store since October 2004.  On October 5, 2008, Plaintiff was serving customers in a checkout lane when Stacy Ferels, another cashier, approached him from behind and pushed on his lower back with her hand.  Plaintiff assumed that Ferels was being "promiscuous," and asked her to stop pushing him and return to her register.  Quarrels Dep. 29:19-22, Sep. 13, 2010.  Ferels allegedly told Plaintiff that he "can't do nothing about it."  Quarrels Dep. 29:12-13.  Ferels walked back to her register, but returned a few minutes later and allegedly grabbed Plaintiff's buttocks.  Quarrels Dep. 34:5-9.  Plaintiff claims that he told Ferels to stop, and she returned to her register, again saying that he "can't do nothing about it."  Quarrels Dep. 30:15-31:12.  Ferels walked back over to Plaintiff's register after a few minutes, and allegedly grabbed his buttocks again.  Quarrels Dep. 33:16-19.  Plaintiff responded by pushing her hand away.

At this point, a service coordinator[1] came over to see what was going on between Plaintiff and Ferels.  Plaintiff explained that Ferels had been coming over to him and grabbing and pushing him.  Ferels said that she had walked over to Plaintiff's register to use his phone because her phone was not working, and that Plaintiff had instigated the encounter.  Plaintiff claims that another employee, Eric, checked Ferels' phone, and stated that it was working.  Quarrels Dep. 25:14-16.  Plaintiff asked the coordinator to check the recording of a nearby security camera to verify his account of the incident, but the camera was apparently not working that night.  Quarrels Dep. 25:17-25.

---

[1] The service coordinator is a non-management position held by a cashier who is responsible for setting lane assignments during a shift.  Taube Aff. ¶ 8.

On October 9, 2008, Plaintiff reported this incident to Deb Taube, his Team Leader, and she asked him to prepare a written statement. Quarrels Dep. 47:6-8. Upon receiving Plaintiff's statement, Taube investigated the matter and discussed it with Store Director Jim Montgomery. Taube and Montgomery issued Ferels written discipline for "conduct unbecoming a team member" and required her to retake an online training course about Meijer's sexual harassment policy. Taube notified Ferels that she would be transferred to a clerk position in the store's gas station effective October 19, 2008.

On November 26, 2008, Plaintiff worked in the store's self-service checkout area for the first part of his shift. When he returned from a break, he was directed by the service coordinator to work at checkout lane 14. Ferels had signed up to work additional hours, and was assigned to the checkout lane next to Plaintiff's. Meijer claims that the service coordinator, as a non-management employee, was unaware of Taube's investigation or the discipline issued in connection with the October 5 incident. Taube Aff. ¶ 8. Ten or fifteen minutes later, Plaintiff notified Team Leader Mary Springer that he was uncomfortable working near Ferels because of the prior incident. Springer said she would "talk to somebody about that," and about thirty minutes later, another Team Leader called Plaintiff to check on him. Quarrels Dep. 65:16-22. Plaintiff was told that because Ferels was not doing anything to him, he should just try to work through the remainder of his shift. Quarrels Dep. 66:6-14. Plaintiff and Ferels worked for approximately two hours on adjacent lanes. Taube Aff. ¶ 9. Plaintiff claims that although Ferels did not come over to him or touch him, she again said that he "can't do nothing." Quarrels Dep. 67:9-20. Taube later informed the service coordinators that Plaintiff and Ferels were not to be

3

placed next to each other in the future. Taube Aff. ¶ 10.

Plaintiff alleges that Ferels subsequently entered the store numerous times when she was not working and walked near his lane, looking him "up and down." Quarrels Dep. 69:12-13. Once or twice, she allegedly told him that he "can't do nothing about this." Quarrels Dep. 69:19-70:4. Plaintiff reported this to Taube, and Taube explained that Ferels was waiting for her father, who also worked at the store. Quarrels Dep. 71:18-21. A Team Leader asked Ferels to avoid Plaintiff when she is in the store. Ferels Aff. ¶ 9.

Plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission, alleging discrimination on the basis of sex, and obtained a "right to sue" letter on April 6, 2010. Plaintiff filed this action on April 27, 2010, seeking declaratory, injunctive, and monetary relief. Plaintiff moved for summary judgment on October 13, 2010, and Defendants moved for summary judgment on October 15, 2010.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant

has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Defendants' Motion for Summary Judgment

**A. Plaintiff's Claims Under 42 U.S.C. §§ 1981, 1982, and 1983**

Defendants assert that Plaintiff's claims under 42 U.S.C. §§ 1981, 1982, and 1983 fail, as those statutes are inapplicable. "[F]ederal law is quite clear that § 1981 prohibits only race discrimination, not sex discrimination." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986) (citing *Runyon v. McCrary*, 427 U.S. 160, 96 S. Ct. 2586 (1976)). Because Plaintiff alleges discrimination only on the basis of sex, Defendants must be granted summary judgment on Plaintiff's § 1981 claim.

Plaintiff's claim under § 1982 fails, as the statute provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by

5

white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Plaintiff has alleged neither racial discrimination nor violation of property rights. The Court grants Defendants summary judgment on Plaintiff's § 1982 claim, as the statute does not apply to sexual harassment.

"Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005). "A private actor acts under color of state law when its conduct is 'fairly attributable to the state.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982)). Meijer is a private corporation, and Taube and Montgomery acted pursuant to their duties as its employees. Plaintiff has failed to allege any facts upon which Defendants' conduct could be attributed to the state; the Court therefore grants Defendants summary judgment on the § 1983 claim.

**B. Plaintiff's Title VII Claims**

Defendants contend that Plaintiff's claims against Taube and Montgomery must be dismissed because Title VII does not impose liability on individual supervisors. The Court agrees. An individual employee or supervisor may not be held personally liable under Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Thus, Taube and Montgomery cannot be held personally liable for the alleged sexual harassment. The Court grants these defendants summary judgment on the Title VII claims against them.

Defendants argue that Plaintiff's allegations, even if true, are insufficient to support a Title VII claim. Plaintiff alleges that Defendants discriminated against him by creating a hostile work environment. Compl. ¶ 20. "A plaintiff may establish a violation of Title VII

by proving that the sex discrimination created a hostile or abusive work environment without having to prove a tangible employment action." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). To establish a hostile work environment, the plaintiff must prove: (1) the employee is a member of a protected class, (2) the employee was subject to unwelcome sexual harassment, (3) the harassment was based on the employee's sex, (4) the harassment created a hostile work environment, and (5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *Id.* at 462-63.

Defendants assert that Plaintiff has failed to establish a hostile work environment based on the alleged conduct. "A hostile work environment occurs 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 463 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). "Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* "The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment." *Id.* Isolated incidents, unless extremely serious, do not amount to discriminatory changes in the terms or conditions of employment. *Id.*

The Court concludes that Plaintiff's allegations are insufficient to establish a hostile work environment. Plaintiff mainly describes isolated incidents, none of which is so

serious as to constitute a change in the terms and conditions of his employment. The October 5, 2008 incident allegedly involved a few brief instances of physical contact during a ten to fifteen-minute period, and Ferels' statements that Plaintiff "can't do nothing about it." On November 26, 2008 Ferels allegedly told Plaintiff that he "can't do nothing," but there was no physical contact between the two. Ferels' subsequent visits to the store also involved no physical contact. Plaintiff alleges that Ferels said once or twice during these visits that he "can't do nothing about this." Plaintiff alleges that during these visits, Ferels was often in the same general area as him, but this is plainly insufficient to establish a hostile work environment. A reasonable person could not conclude that these scattered incidents constituted "severe or pervasive" harassment. Accordingly, Plaintiff's Title VII claims fail as a matter of law, and the Court must grant summary judgment for Defendants. Although Plaintiff is displeased by Ferels' conduct, Title VII is not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998).

### IV. Plaintiff's Motion for Summary Judgment

Plaintiff, in his Motion for Summary Judgment, argues that there is no dispute of material fact in this case. The Court, however, has concluded for the reasons stated above that Plaintiff's claims are legally deficient. Accordingly, Plaintiff's Motion for Summary Judgment must be denied.

### V. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**;

8

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Jeffrey S. Rueble, Esq.

Mack Quarrels, Jr.
1908 E. Granson St.
Jackson, MI 49202